IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Companion Property and Casualty Insurance Company, | C.A. No. 3:12-CV-2843-CMC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| Robert B. Moreno, Sr. d/b/a RMIS Insurance Services, | |
| Defendant. | |

This matter is before the court on motion of Plaintiff Companion Property and Casualty Insurance Company ("Companion") for temporary restraining order and preliminary injunction, filed October 18, 2012. Dkt. No. 11. Defendant Robert B. Moreno, Sr., doing business as RMIS Insurance Services ("RMIS"), filed a memorandum in opposition on October 23, 2012. The court held a hearing on October 24, 2012, during which the court reviewed the factual background of the dispute. For reasons stated on the record and below, Plaintiff's motion for temporary restraining order is denied.

**JURISDICTION, VENUE & APPLICABLE LAW**

The court has jurisdiction and venue based on the Agency Agreement. The Agency Agreement provides that RMIS consents to South Carolina jurisdiction and that South Carolina is "the exclusive forum for initiating any litigation with respect to this Agreement." Dkt. No. 1-1 at ¶ 55 (Agency Ag.). Per the Agreement, South Carolina law applies. *Id.* at ¶ 61.

**STANDARD**

A plaintiff seeking a temporary restraining order must establish all four of the following elements: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F. 3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 558 U.S. ___, 130 S. Ct. 2371 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). Plaintiff must make a clear showing that it is likely to succeed on the merits of their claim. *Winter*, 555 U.S. at 22; *Real Truth*, 575 F.3d at 345-46. Similarly, there must be a clear showing of irreparable harm absent injunctive relief.

**DISCUSSION**

**(1) Likelihood of Success on the Merits.** Companion has failed to show a likelihood of success on the merits. Companion seeks to suspend RMIS's authority to write new automobile insurance policies under the Agency Agreement, prior to the February 9, 2013 termination date. Companion also seeks an order requiring RMIS to "adhere to Companion's instructions to remove Companion's name and program off of Vertafore's FSC-Rater." Dkt. No. 11 at 14. However, to suspend RMIS's authority under the Agency Agreement, Companion must show a breach of that agreement.[1]  Agency Ag. ¶ 53.

---

[1] Companion also seeks an order requiring RMIS to "adhere to Companion's instructions to coordinate with SCJ Insurance Services on the management of all new driver applications." Dkt. No. 11 at 14. To the extent this relates to the suspension of RMIS's authority to write new policies,

2

First, Companion alleges that RMIS is violating accounting and reporting requirements set forth in the Agency Agreement. Specifically, Companion alleges "Moreno intentionally maintains inaccurate records, commingles premiums, and fails to fund properly the premium trust account to mask his breaches of the Agency Agreement and to allow Moreno to continue to overwrite premium and underfund the Premium Payment owed to Companion by Moreno." Compl. ¶ 49. Companion also alleges RMIS has "intentionally failed to provide access to records to Companion's auditors." *Id.* at ¶ 54. Companion has failed to substantiate its allegations. Further, Companion has failed to specify how it has been or is being damaged by the alleged mishandling of accounts or commingling of funds.

Second, Companion alleges that it had no knowledge of its listing on the FSC-Rater, and that the listing is unapproved advertising, in violation of the Agency Agreement. RMIS, however, submitted email communications that confirm RMIS in fact knew of and did not object to Companion's listing on the FSC-Rater. The court, therefore, finds that listing of Companion on the FSC-Rater does not violate the advertising provisions of the Agency Agreement.

Finally, Companion alleges that RMIS has sold policies that exceed maximum premium limits as set forth in the Reinsurance Agreement.[2] Although there are limits in the Reinsurance Agreement, RMIS contends that the limits were increased by $20 million as a result of the Second

---

the court considers whether Companion has shown a breach of the Agency Agreement. To the extent Companion seeks this relief based on any failure of RMIS to cooperate in the transition to SCJ Insurance Services in anticipation of the February 9, 2013 termination date, Companion did not advance this argument in its papers or oral argument.

[2] The Reinsurance Agreement is incorporated into the Agency Agreement.

3

Amendment to the Reinsurance Agreement,[3] and that Companion was aware and approved of RMIS writing policies in excess of any limits set forth in the Reinsurance Agreement. RMIS submitted an email communication from Companion's President, George Reeth, in which Mr. Reeth explains his dissatisfaction with the contracts for Companion's auto insurance program in California through RMIS, including the lack of "premium caps." Dkt. No. 18-9 at 3 ("Not having premium caps and other controls is just poor management and quite frankly unprofessional."). Companion has failed to show that the "gross net written premium" limits in the Reinsurance Agreement were not amended. The court finds that Companion has not shown a likelihood of success that RMIS breached the Agency Agreement by writing policies in excess of the premium limits.

**(2) Irreparable Harm**. Companion has failed to show irreparable harm. Companion alleges that it will suffer financial harm as a result of RMIS selling new policies. Dkt. No. 11 at 11 ("Under Moreno's position, and unless the Court intervenes, Companion is exposed to the potential of unlimited additional writing and millions more dollars of premium and losses."). Companion also alleges that it will suffer reputational harm. *Id.* at 12 ("Moreno's continued promotion and writing of new policies in the face of mounting losses will undermine Companion's financial position and jeopardizes Companion's excellent rating."). Although Companion has alleged speculative financial harm, Companion has not identified the nature of its losses if RMIS continues to write new business until the expiration of the Agency Agreement. Companion has not submitted any evidence to suggest that RMIS is capable of causing a financial crisis for Companion that would lead to

---

[3] The Second Amendment increases maximum limits of liability. Dkt. No. 18-5 at 33. RMIS contends that the net effect of this amendment increases the maximum premium limits.

Companion's inability to fulfill its contractual obligations to its customers, other partners, or creditors. The court finds that any financial harm that Companion may incur as a result of RMIS's continuing sale of new policies through February 9, 2013 is not irreparable and money damages could compensate Companion should it establish a breach of contract.[4] To the extent that RMIS is violating California insurance regulations, Companion has other remedies available.

**(3) Balance of Equities**. The court finds that the balance of the equities tips in favor of RMIS. During the hearing, Counsel for Companion argued, to the extent that Companion had previously authorized RMIS to sell in excess of any premium limits and list Companion on the FSC-Rater, that authority is now revoked. The court finds that Companion's attempt to revoke certain authority previously provided to RMIS by current or prior management requires a showing of breach of the Agency Agreement, which Companion has failed to establish at this time.

**(4) Public Interest.** The court finds that continuation of the Agency Agreement through the February 9, 2013, termination date is in the public interest. Companion's customers in California have an interest in a smooth transition of Companion's business to a new managing agent or other carrier during the final months of the Agency Agreement.

---

[4] *See, e.g.*, *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 120 (4th Cir. 1993) (affirming finding that "expenses incurred in relocation, injury to reputation, loss of profits" and other "highly speculative and largely economic injuries" were not irreparable harm); *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("[I]n the absence of special circumstances, . . . recoverable economic losses are not considered irreparable.").

## CONCLUSION

For reasons set forth above and on the record, the court denies Plaintiff's motion for temporary restraining order. The court also denies Plaintiff's motion for preliminary injunction without prejudice. Should Plaintiff seek relief through preliminary injunction after discovery, Plaintiff shall file a renewed motion.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 25, 2012